UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **MICHELLE FISCUS, M.D., FAAP,** | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 3:21-cv-00686 ) |
| **COMMISSIONER LISA PIERCEY, M.D., MBA, FAAP, Tennessee Department of Health, in her official and individual capacities; CHIEF MEDICAL OFFICER TIM JONES, M.D., Tennessee Department of Health, in his official and individual capacities,** | ) ) ) ) ) ) ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

On July 12, 2021, Dr. Michelle Fiscus was terminated from her position as Medical Director of the Vaccine-Preventable Diseases and Immunization Program at the Tennessee Department of Health ("TDOH"). Days later, an internal memorandum ("the memo") began circulating in the media that Dr. Fiscus insists impugned her honesty and morality by "casting her as a rogue political operative pursuing her own agenda and as a self-dealing grifter of the public purse, seeking to divert government funds to an organization in which she had an unethical material financial interest." (Doc. No. 1, Cmpl. ¶ 123). When Dr. Fiscus requested, but did not receive, a name-clearing hearing as envisioned by the Supreme Court in Board of Regents of State Colleges v. Roth, 408 U.S. 564, 573 (1972), she filed suit in this Court against the author of the memo, Dr. Tim Jones, TDOH Chief Medical Officer, and its recipient, TDOH Commissioner Dr. Lisa Piercey.

Although the Complaint runs 25 pages and contains 135 paragraphs, it has but one cause of action – a Fourteenth Amendment "stigma-plus" liberty interest claim. At a minimum, Defendants are entitled to qualified immunity on that claim and, accordingly, their Motion for Judgment on the Pleadings (Doc. No. 9) will be granted as to Dr. Fiscus's claim for monetary damages. They will remain as Defendants for purposes of potential declaratory and injunctive relief, however.

## I.

Because it is central to the Complaint, the Court sets forth the memo from Dr. Jones to Dr. Piercey in its entirety:

> Based on program management deficiencies and failure to follow appropriate processes and procedures, please accept this recommendation to expire the executive service of Dr. Michelle Fiscus, Director, Vaccine Preventable Diseases and Immunization Program (VPDIP), Tennessee Department of Health.
>
> This recommendation is based on Dr. Fiscus's failure to maintain good working relationships with members of her team, her lack of effective leadership, her lack of appropriate management, and unwillingness to consult with superiors and other internal stakeholders on VPDIP projects.
>
> On multiple occasions during the 2020-2021 COVID response, Dr. Fiscus has failed to maintain satisfactory and harmonious relationships among her team. In February 2021, CEDEP leadership and TDH Human Resources received multiple complaints from program staff regarding her management style, treatment of employees, and poor program morale. Dr. Dunn met with five senior team members who expressed consistent complaints related to management of the program by Dr. Fiscus during the COVID response. He had several coaching sessions with Dr. Fiscus, with minimal improvement in the situation noted. Two of her most senior leaders have subsequently resigned.
>
> On March 7, 2021, Dr. Dunn and I met with Dr. Fiscus and another departmental physician to mediate complaints against Dr. Fiscus of disrespectful treatment and ineffective management. The meeting terminated with a refusal of both parties to communicate constructively, and with a refusal by the other physician to work further on the VPDIP team. Dr. Fiscus was coached on professionalism and teamwork.
>
> Dating back to December 2020, the vaccine planning team required intervention by CEDEP leadership to address inefficient use of team resources, including poor inter-program communication regarding vaccine distribution. Repeated failures by Dr. Fiscus to appropriately delegate to others resulted in repetitive, long, and inefficient meetings. These meetings took already busy colleagues away from other tasks.

> Over the past three months Dr. Fiscus requested to give a new non-profit organization TDH funding to support VPDIP activities. This organization was founded and led by Dr. Fiscus, had no Executive Director or other employees, and had no other substantive source of funding. Providing funds to such an entity would be poor judgement [sic] and a substantial conflict of interest.
>
> In June, 2021, Dr. Fiscus communicated directly with a state university regarding the department producing COVID-vaccine reports for the institution. She did not notify or consult with supervisors, and the situation only became evident when departmental legal counsel received formal documents directly from the university memorializing the arrangement. The requested reports were not produced by the department.
>
> In May, 2021, Dr. Fiscus broadly shared a letter regarding her own interpretation of state and federal law with external partners with respect to vaccinations and other medical treatment of minors. The letter should have been reviewed by both leadership and departmental legal counsel. However, Dr. Fiscus did not share the letter nor otherwise include any of these parties in the drafting process prior to sending it out. This action resulted in confusion of both law and policy for private providers, parents, and legislators.
>
> These examples clearly demonstrate that Dr. Fiscus's performance in this role has led to strained relationships with internal and external stakeholders at multiple levels, and to an ineffective and noncohesive workplace. Her leadership and management of her team does not foster the culture or environment expected at the Tennessee Department of Health.

(Doc. No. 1-1 at 1-2).

Dr. Fiscus was not aware of the memo or its contents at the time of her termination. Instead, she learned about the memo after it had been leaked to the press and received extensive coverage, including publication in the ASSOCIATED PRESS, the DAILY NEW JOURNAL in Murfreesboro, Tennessee, the CANADIAN PRESS, the CHATTANOOGA TIMES FREE PRESS, and the TENNESSEAN in Nashville. (Doc. No. 1-2 at 1-19). Some outlets published the memo in its entirety. A copy of the memo was also placed in Dr. Fiscus's personnel file by Defendants. (Cmpl. ¶ 17).

Dr. Fiscus particularly takes issue with two of the paragraphs in the memo that she deems to be stigmatizing for purpose of her Fourteenth Amendment claim. The first relates to her allegedly requesting funding for a non-profit agency, and the suggestion of financial impropriety and self-dealing in relation thereto. According to the allegations in the Complaint, which must be accepted

as true on a motion to dismiss, Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), this is an intentional and stigmatizing mis-characterization of what occurred. In actuality the non-profit in question was "ImmunizeTN," whose mission was "to ensure all Tennesseans benefit from the protections provided by immunizations so that together we can achieve a healthy, thriving Tennessee free of vaccine-preventable diseases." (Id. ¶ 25). Dr. Fiscus served "only in an *ex-officio* advisory capacity" to that non-profit, was not on the board of directors or payroll, and had "no financial interest whatsoever" in it. (Id. ¶ 26, 28). Moreover, Dr. Jones actually praised Dr. Fiscus for her role in the organization, writing in February 19, 2019 performance evaluation: "[Dr. Fiscus] has taken the initiative to start a statewide coalition[ImmunizeTN] which has been very successful." (Id.. ¶ 27).

The second relates to the paragraph about Dr. Fiscus allegedly sharing a letter interpreting the law about vaccinating minors (and more specifically, the "mature minor doctrine" that holds some children are mature enough to make decisions for themselves), without it having been reviewed by her superiors and counsel. Again, accepting the Complaint's allegations as true, the allegations in that paragraph are demonstrably false.

According to Dr. Fiscus, her letter contained "language taken verbatim from a memorandum provided to [her] by Grant Mullins, a Dep[artment] of Health attorney," that was sent via email from him to her. (Id. ¶ 32). The email went on to state that the attached memorandum had been "blessed by the Governor's office" and that Dr. Fiscus should "feel free to distribute [it] to anyone." (Id. ¶ 33).

The notion that minors could be vaccinated without parental consent did not sit well with many. In fact, "Republican legislators took issue with the mature minor doctrine and specifically associated that doctrine with Dr. Fiscus." (Id. ¶ 38). One legislator even called for the dissolution

4

of the Department of Health. (Id. ¶ 39). The ensuing imbroglio led to calls for Dr. Fiscus's removal, even though she did not "play any role in the creation of the mature minor doctrine or the [Department's] historical reliance on that doctrine." (Id. ¶ 41).

After the memo was disseminated, counsel for Dr. Fiscus sent Mr. Mullins and Defendants a formal request for a name-clearing hearing. That request was summarily denied by Mr. Mullins "because [Dr. Fiscus] has not established the elements necessary to show entitlement to a name-clearing hearing[.]" (Id. ¶¶ 43, 44).

Dr. Fiscus claims that, as a result of Dr. Smith's memo and what followed, her standing and association in the community were severely tarnished. She alleges that things became so bad that she and here husband placed their home up for sale, intending to relocate to another state where she could find employment. (Id. ¶¶ 45, 46).[1]

Defendants move for judgment on the pleadings, arguing that they did not deprive plaintiff of a liberty interest and, thus, no name-clearing hearing was required. More specifically they argue that the memo did not create a moral stigma. Rather it alleged management deficiencies, failure to follow appropriate procedure and processes, failure to maintain harmonious relationships, disrespectful treatment, ineffective management, and poor judgment. (Doc. No. 10 at 7). According to Defendants, all of these allegations "relate[] solely to conduct within the scope of [Dr. Fiscus's] employment, and none carry a badge of shame that would wholly foreclose future employment." (Id.).

---

[1] In her Reply, Dr. Fiscus indicates that she and her husband have since sold their home and relocated to Virginia. (Doc. No. 14 at 7, n.1).

## II.

"Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." Wisconsin v. Constantineau, 400 U.S. 433, 437 (1971). However, reputation alone is not a constitutionally protected liberty or property interest. See Paul v. Davis, 424 U.S. 693, 706 (1976) (observing that "the Court has never held that the mere defamation of an individual, whether by branding him disloyal or otherwise, was sufficient to invoke the guarantees of procedural due process absent an accompanying loss of government employment"). Instead, for there to be a constitutionally protected liberty interest there must be stigma *plus* the alteration of "a right or status previously recognized by state law." Id. at 711. Typically, the "plus" factor of the stigma-plus test is the loss of a government job, id., or the foreclosure of "the opportunity to practice a chosen profession," Joelson v. United States, 86 F.3d 1413, 1420 (6th Cir. 1996).

The Sixth Circuit has identified five factors to be considered when determining whether a plaintiff was deprived of a liberty interest and entitled to a hearing:

> First, the stigmatizing statements must be made in conjunction with the plaintiff's termination from employment. . . . Second, a plaintiff is not deprived of his liberty interest when the employer has alleged merely improper or inadequate performance, incompetence, neglect of duty or malfeasance. . . . Third, the stigmatizing statements or charges must be made public. Fourth, the plaintiff must claim that the charges made against him were false. Lastly, the public dissemination must have been voluntary.

Brown v. City of Niota, 214 F.3d 718, 722–23 (6th Cir.2000) (citing Ludwig v. Bd. of Trustees, 123 F.3d 404, 410 (6th Cir.1997)). "Once a plaintiff has established the existence of all five elements, he is entitled to a name-clearing hearing if he requests one." Id. "It is the denial of the name-clearing hearing that causes the deprivation of the liberty interest without due process." Id.

6

For present purposes, Defendants only challenge the second element. They argue that Dr. Fiscus's due process claim either fails on the merits or, at the very least, they are entitled to qualified immunity.

### A.

"Qualified immunity shields government officials in the performance of discretionary functions from standing trial for civil liability unless their actions violate clearly established rights." DiLuzio v. Vill. of Yorkville, 796 F.3d 604, 608 (6th Cir. 2015). Once the defense is raised, a plaintiff must come forward with evidence from which a jury could find "(1) that the official violated a statutory or constitutional right, and (2) the right was 'clearly established' at the time of the challenged conduct." Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011). Both prongs must be met, and judges "can exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson v. Callahan, 555 U.S. 223, 236 (2009).

For reasons that will become apparent in the next section, the Court cannot say that Defendants' actions did not violate Dr. Fiscus's constitutional rights and, in particular, her right to due process. What the Court can say is that Dr. Fiscus's has not shown the right to be clearly established, particularly since qualified immunity is intended to "protect 'all but the plainly incompetent or those who knowingly violate the law.'" al-Kidd, 563 U.S. at 735 (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

"'For a right to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" Holzemer v. City of Memphis, 621 F.3d 512, 527 (6th Cir. 2010) (quoting, Leonard v. Robinson, 477 F.3d 347, 355

7

(6th Cir. 2007)). "'A right is clearly established if there is binding precedent from the Supreme Court, the Sixth Circuit, the district court itself, or other circuits that is directly on point.'" Id. (quoting Risbridger v. Connelly, 275 F.3d 565, 569 (6th Cir. 2002)). "[T]he plaintiff has the burden of showing that a right is clearly established" such that "a reasonable official in [defendants'] position would have clearly understood that he or she was under an affirmative duty to refrain from such conduct." Barrett v. Steubenville City Sch., 388 F.3d 967, 970 (6th Cir.2004).

Dr. Fiscus has not carried the burden of establishing that Defendants violated clearly established law. She argues that, at the time the memo was drafted and circulated, "it was clearly established in this Circuit that denying a name-clearing hearing under the circumstances of this case would violate Dr. Fiscus's constitutional rights[.]" (Doc. No. 14 at 7). That, however, frames the argument too broadly.

To be sure, and as Dr. Fiscus argues, the Sixth Circuit has long recognized a public employee's liberty interest in reputation and the entitlement to a name-clearing hearing where one is appropriate:

> An injury to a person's reputation, good name, honor, or integrity constitutes the deprivation of a liberty interest when the injury occurs in connection with an employee's termination. When a deprivation of a liberty interest of this kind occurs, the employee must be afforded notice and an opportunity to be heard to refute the charges disseminated against him. Thus, when a nontenured employee shows he has been stigmatized by the voluntary, public dissemination of false information in the course of a decision to terminate his employment, the employer is required to afford him an opportunity to clear his name.

Ludwig v. Bd. of Trustees of Ferris State Univ., 123 F.3d 404, 410 (6th Cir. 1997) (citations and quotations omitted). However, the Sixth Circuit followed up that observation with the statement that "'a charge that merely makes a plaintiff less attractive to other employers but leaves open a definite

8

range of opportunity does not constitute a liberty deprivation.'" Id.. Rather, "[a] moral stigma such as immorality or dishonesty is required to show a deprivation of liberty." Id. Consequently, "allegations of improper or inadequate performance or, in some cases, . . . charges of incompetence, neglect of duty or malfeasance," may not be sufficient to support a stigma-plus claim. Chilingirian v. Boris, 882 F.2d 200, 206 (6th Cir. 1989).

In the section of her brief related to the issue of qualified immunity, Dr. Fiscus cites only a couple of cases to show that the law was clearly established. She relies on Gunasekera v. Irwin, 551 F.3d 461, 469 (6th Cir. 2009), which was also cited in her lawyer's letter to attorney Mullins when she requested a hearing. From this case, she argues:

> "[W]hen Gunasekera was decided by the Sixth Circuit, on January 8, 2009, the law of this Circuit became clear that, in certain situations, a plaintiff may be entitled to a public name-clearing hearing. Counsel's letter to Defendants requesting a name-clearing specifically quoted this piece of the Gunasekera opinion, thus Defendants had actual knowledge of the law at the time they decided, without explanation, to deny Dr. Fiscus a name-clearing hearing.

(Doc. No. 14 at 13). This hardly advances the ball because that same logic would also compel the opposite conclusion: in some cases a plaintiff would not be entitled to a name-clearing hearing. Regardless, at issue there were allegations of paganism and the question of whether a professor's removal from Graduate Faculty Status entitled him to a public hearing.

Dr. Fiscus also relies upon Brown v. City of Niota, 214 F.3d 718 (6th Cir. 2000), where the issue was whether police officers were denied their right to a name-clearing hearing when they did not request such a hearing until the very day that they filed suit. In the course of finding that the city was entitled to judgment, the Sixth Circuit "assum[ed] that the board's comments [about a conflict of interest] were stigmatizing[.]" Id. at 723. Dr. Fiscus argues this statement, "further undermine[s]"

9

Defendants' entitlement to qualified immunity, but concedes the Sixth Circuit did "not decid[e] that allegations of conflict of interest were stigmatizing." (Doc. No. 14 at 9, 24). That the Sixth Circuit assumed comments about a conflict of interest were stigmatizing hardly means that *any* allegations regarding a conflict of interest are stigmatizing.

Elsewhere in her brief, Dr. Fiscus summarizes a number of cases, some from this circuit and others not, and some published and others unpublished. (Id. at 9-14). The Court does not read any of those cases, however, as standing for the proposition that every statement of a conflict of interest or every statement about an employee's character or honesty is stigmatizing as a matter of law. To the contrary, and as Dr. Fiscus argues, those "authorities illustrate that Dr. Fiscus has *adequately alleged* the July 9 memo contains impermissibly stigmatizing statements." (Id. at 14) (emphasis added). Thus, for example, the Sixth Circuit in Prichard v. Lafferty, 974 F.2d 1338 (6th Cir. 2000) (emphasis added) stated that the statements made about plaintiff "related to his job performance, but they also *arguably* reflected on his integrity"; and in Crosby v. Univ. of Ky., 863 F.3d 545, 550 (6th Cir. 2017) stated that the statements at issue "could certainly be taken to indicate that [plaintiff] is a dishonest person," not that they must be taken as such as a matter of law. Similarly, in DeLuca v. City of Hazelton, 396 F. Supp.3d 392, 405 (M.D. Pa. 2019), the district court found that "a reasonable finder of fact could find these statements were substantially and materially false and infringed upon Plaintiff's reputation, honor, or integrity"; while the district court in Socol v. Albermarle Cty. Sch. Bd., 399 F. Supp.3d 523, 533 (W.D. Va. 2019) concluded that plaintiff "ha[d] stated a plausible claim for relief" based upon statement that plaintiff had "misused [purchase cards deliberately and egregiously." Because they are not directly on point, these cases do not make the law clearly established.

"For precedent to be 'directly on point,' it need not involve the unlawfulness of the very action in question, but the unlawfulness of the action must be apparent in light of the pre-existing law." Humes v. Gilless, 108 F. App'x 266, 268 (6th Cir. 2004) (quoting, Risbridger, 275 F.3d at 665). In Anderson v. Creighton, the Supreme Court explained the right must have been "clearly established" in a "particularized" sense and "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right" at the time of the incident. 483 U.S. 635, 639–640 (1987). More recently, the Court has stated that the "inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition," with "[t]he dispositive question [being] 'whether the violative nature of *particular* conduct is clearly established." Mullenix v. Luna, 577 U.S. 7, 12 (2015) (citations omitted) (emphasis in original).

"Once raised, it is the plaintiff's burden to show that the defendants are not entitled to qualified immunity." Burgess v. Fischer, 735 F.3d 462, 472 (6th Cir. 2013) (citation omitted). Because Dr. Fiscus has not shown that it was "sufficiently clear that every reasonable official would have understood that what [Defendants] [did] violate[d]" her liberty interests, Mullenix, 577 U.S. at 12, Defendants are entitled to qualified immunity insofar as Dr. Fiscus seeks money damages.

**B.**

Turning to the merits, Defendants cite Stringfield v. Graham, 212 F. App'x 530, 540 (6th Cir. 2007) for the proposition that "[n]otably, the question of whether a statement is a 'stigmatizing' statement is a question of law – not fact." (Doc. No. 10 at 6). Stringfield, however, did not make such a broad pronouncement, and this Court is unable to locate a Sixth Circuit decision that does. Elsewhere, the Ninth Circuit has held that "[w]hether a defendant's statements rise to the level of stigmatizing a plaintiff is a question of fact," Kramer v. Cullinan, 878 F.3d 1156, 1162 (9th Cir.

11

2018). At least the Second, Third, and Eleventh Circuits have suggested the same. See Patterson v. City of Utica, 370 F.3d 322 (2d Cir. 2004) (finding that question about whether statements made by mayor to community leaders were stigmatizing was for the jury); Lassiter v. Covington, 861 F.2d 680, 684 (11th Cir. 1988) ("The record reveals that questions of material fact exist as to whether the charges against [plaintiff] were of a stigmatizing nature and were publicly disclosed."); McKnight v. Se. Pennsylvania Transp. Auth., 583 F.2d 1229, 1236 (3d Cir. 1978) ("We find persuasive [plaintiff's] contention that the issue whether defendants' charge of intoxication is sufficiently stigmatizing to constitute an infringement of 'liberty' is significantly a question of fact that cannot be appropriately determined at this juncture").

No doubt, there are some statements that can be defamatory as a matter of law, such as unwarrantedly calling someone a thief, see e.g. Paul, 424 U.S. at 696, or a sex offender, see e.g. Kirby v. Siegelman, 195 F.3d 1285, 1292 (11th Cir. 1999). On the other hand, "[a]s a matter of law, an employee's liberty interest is not deprived if the employer merely states that the employee was terminated because of 'improper or inadequate performance, incompetence, neglect of duty or malfeasance.'" Martin v. City of Glasgow, 882 F. Supp. 2d 903, 914 (W.D. Ky. 2012) (quoting Ludwig, 123 F.3d at 411). Here, of course, the statements at issue falls somewhere between these two poles, and it is precisely because the parties cite cases that support their respective position that Dr. Jones's memo either was or was not stigmatizing for purposes of Dr. Fiscus's request for injunctive and declaratory relief.

### III.

For the foregoing reasons, Defendants' Motion for Judgment on the Pleadings (Doc. No. 9) will be granted in part and denied in part. The Motion will be granted insofar as Defendants are

12

entitled to qualified immunity on Dr. Fiscus's claims for money damages, but denied as to her claims for declaratory and injunctive relief.

An appropriate Order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE

13